UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| KRISTIN FLEMING : | |
| Plaintiff, : | |
| : | |
| : | |
| : | |
| : | **COMPLAINT** |
| COMPREHAB, LLC d/b/a COMPLEAT : | (Jury Trial Requested) |
| KIDZ - PEDIATRIC THERAPY and : | |
| COMPLEAT REHAB & SPORTS : | |
| THERAPY / COMPLEAT KIDZ : | |
| Defendants. : | |
| : | |
| : | |

COMES NOW the Plaintiff, KRISTIN FLEMING (hereinafter "Plaintiff"), by and through her undersigned attorney, hereby files this Complaint for damages and other legal and equitable relief from Defendants COMPREHAB, LLC d/b/a COMPLEAT KIDZ -PEDIATRIC THERAPY and COMPLEAT REHAB & SPORTS THERAPY / COMPLEAT KIDZ for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 20003 *et seq.*

**NATURE OF THE CASE**

1. This is an action brought by Plaintiff seeking damages from Defendant for acts of discrimination. Defendant's acts of discrimination are in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq., the Americans with Disabilities Act, and any other causes of action that can be inferred from the facts set forth herein.

1

2. Plaintiff is seeking damages and other legal and equitable relief from Defendants, COMPREHAB, LLC d/b/a COMPLEAT KIDZ- PEDIATRIC THERAPY and COMPLEAT REHAB & SPORTS THERAPY / COMPLEAT KIDZ for violations of the Americans with Disabilities Act (ADA).

3. Plaintiff was employed by Defendants at 1899 Tate Blvd, SE Suite 2106, Hickory, NC 28602. Throughout Plaintiff's employment with Defendants, Plaintiff has been subjected to discrimination and retaliation based on disability in violation of the ADA and other applicable statutes.

## JURISDICTION & VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; 42 U.S.C. §§ 2000e *et seq.,* as amended, and (iii) 42 U.S.C. §§ 1981 *et seq.,* as amended.

5. In addition to the above referenced federal claims, this complaint asserts all claims arising under the laws of the State of North Carolina. The state law claims are sufficiently related to the federal claim such that the Court may exercise supplemental jurisdiction over them, as provided for under 28 U.S.C. § 1367. The state law claims arise out of the same common nucleus of operative facts as the federal claim, and they form part of the same case or controversy under Article III of the United States Constitution. No exceptional

circumstances exist that would justify declining the exercise of supplemental jurisdiction over the state law claims.

6. Venue is proper in this Court in as much as the unlawful employment practices occurred in this judicial district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (c), and (d), in that Defendants maintain offices and conduct business in this district.

**PARTIES**

7. Plaintiff is a person who has been aggrieved by Defendants' actions. She is, and has been, at all relevant times, a resident of North Carolina.

8. Upon information and belief, Defendant Comprehab, LLC is domestic limited liability company with a principal office and place of business in Hickory, Catawba County, North Carolina, where it maintains and administers its' office which once employed Plaintiff.

9. Upon information and belief, Defendant Compleat Rehab & Sports Therapy / Compleat KiDZ is company with a principal office and place of business in Hickory, Catawba County, North Carolina, where it maintains and administers its' office which once employed Plaintiff.

10. Plaintiffs allege that Defendants, Comprehab, LLC and Compleat Rehab & Sports Therapy / Compleat KiDZ, hereinafter referred to collectively as "Defendants," were engaged in a joint enterprise, working cooperatively and with mutual intent to undertake actions that are the subject of this lawsuit. For the purposes of this action, the Defendants are treated as a single entity due to their collaborative efforts and shared objectives in the misconduct alleged herein.

11. As part of this joint enterprise, each Defendant was aware of, contributed to, and facilitated the actions and decisions that led to the harm complained of in this lawsuit. The Defendants' concerted actions and unified conduct establish their joint and several liability for all damages claimed by the Plaintiffs as a direct and foreseeable result of the Defendants' actions.

12. Therefore, the Plaintiff requests that the Court recognize the joint liability of the Defendants under the theory of joint enterprise and hold them accountable for all compensatory and punitive damages, legal fees, and any other relief deemed just and proper by the Court.

13. Defendants transacted and continues to transact business in North Carolina by, among other things, employing persons at 1899 Tate Blvd, SE Suite 2106, Hickory, NC 28602 located within North Carolina and within this judicial district.

14. At all times herein mentioned, Defendants were employers having fifteen (15) or more employees, and as such was prohibited from retaliating against an employee for complaining of disability discrimination and retaliation. Upon information and belief, Defendants employ more than 300 employees bringing it within the jurisdiction of the Americans with Disabilities Act (hereinafter "ADA").

**EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES**

15. Plaintiff, who has herein alleged claims pursuant to Title VII, has timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 16, 2023.

16. On February 28, 2024, Plaintiff received her Notice of Right to Sue from the EEOC.

## STATEMENT OF FACTS

17. Plaintiff commenced employment as a Registered Behavioral Therapist for Defendants located at 1899 Tate Blvd, SE Suite 2106, Hickory, NC 28602, on or around September 6, 2022.

18. Defendants employed a Senior Practice Manager named Leslie Burleson (hereinafter "Ms. Burleson"). Moreover, Ms. Burleson in her capacity as Senior Practice Manager, possessed and exercised the necessary authority to act on behalf of Defendants. This authority included, but was not limited to, making decisions, implementing policies, and undertaking actions that are central to the allegations contained herein. It is further alleged that such authority was vested in Ms. Burleson by virtue of her position as the Senior Practice Manager and was acknowledged and accepted by Defendants. Therefore, any actions or decisions made by Ms. Burleson in this capacity are attributable to Defendants.

19. Plaintiff reported directly to Ms. Burleson.

20. Defendants employed a Board Certified Behavior Analyst named Anna Shamblin (hereinafter "Ms. Shamblin").

21. Defendants employed a Human Resources Director named Seng Yang (hereinafter "Mr. Yang").

22. Plaintiff sought medical treatment from a Family Nurse Practitioner named Mimi Starnes (hereinafter "Mrs. Starnes").

23. Plaintiff sought medical treatment from Behavioral Therapist India Mcwhorter (hereinafter "Ms. Mcwhorter).

24. Plaintiff initially sought employment with Defendants due to her lifelong goal of assisting children with disabilities.

25. Plaintiff's essential duties include but are not limited to: (1) effectively managing disruptive behavior within guidelines set by behavior Defendants' intervention plan; (2) working one-on-one with high behavior risk children, including disruptive children; (3) following the behavior/ skill acquisition plan; (4) collaborating with family and treatment team; (5) collecting all relevant data; and (6) communicating relevant data to the BCBA.

26. Plaintiff has at all times relevant had the skills, experience, education for the position of Registered Behavioral Therapist.

27. At all relevant times throughout her employment, Plaintiff has satisfactorily performed her job.

28. Plaintiff's employment history is void of any negative performance reviews.

29. Plaintiff consistently received positive feedback on her monthly performance evaluations.

30. Plaintiff informed Defendants of her disability through her onboarding/ orientation paperwork.

31. Plaintiff possesses a severe and debilitating medical condition known as Tourette Syndrome.

32. Plaintiff was diagnosed with Tourette Syndrome on or about May 6, 2021.

33. Tourette Syndrome affects Plaintiff both mentally and physically, significantly impacting her daily life and her ability to engage in various activities.

34. Tourette Syndrome is a neurological disorder that causes people to have involuntary tics and repetitive vocalizations, also known as "tics". These tics are sudden, unwanted, and uncontrolled movements or vocal sounds that people do repeatedly. Tics can include eye blinking, shrugging, facial grimacing, grunting, sniffing, or barking. Tics can last for

minutes to several hours, rendering Plaintiff unable to function normally during these episodes.

35. The unpredictable nature of tics has hindered Plaintiff's ability to perform her job duties as a Registered Behavioral Therapist.

36. Specifically, Plaintiff is not able to drive to work or operate machinery when she experiences episodes of uncontrollable tics.

37. Furthermore, Plaintiff notified Defendants in her onboarding paperwork that stated she had a disability.

38. Plaintiff also requested from Defendants a reasonable accommodation which stated that her tics may cause her to be absent from work for treatment.

39. Defendants' provided Plaintiff with a reasonable accommodation request form that asked what essential job function was Plaintiff unable to perform while absent as follows . . . "An employee who must be absent from work to receive medical treatment(s) such as scheduled medical visits, for a serious health condition is to be *not able* to perform the essential job functions of the position during absence for treatment(s)."

40. In responses, Ms. Starnes stated on the reasonable accommodation request form that <u>while absent</u> Plaintiff was unable to manage disruptive behavior of students.

41. Despite Plaintiff's documentation specifying that her restrictions are present when she is absent from work, Defendants used this fact to falsely claim that Plaintiff was unable to substantially perform her job duties.

42. Moreover, Plaintiff's tics may hinder her from performing normal tasks such as walking, speaking, and the operation of her bodily functions.

43. Plaintiff submitted a doctor's note to Mr. Yang from her neurologist, Rodrick Elias, MD (hereinafter "Dr. Elias") in support of her request for a reasonable accommodation.

44. Specifically, Dr. Elias' note stated that it is his medical opinion that it is necessary for Plaintiff to have the option to take off from work up to 2 days per month over the course of next year to tend to her tics, as they can become unmanageable at times.

45. Despite Dr. Elias' note that specifying the duration of one year, Defendants refused to honor this note's duration and insisted that Plaintiff obtain a new note every time she needs to use medical leave.

46. Plaintiff provided Ms. Burleson and with doctor's notes, records, and detailed explanations outlining her medical diagnosis.

47. Plaintiff's reasonable accommodation would allow her to exercise her sick leave on days where her tics were unmanageable.

48. Plaintiff successfully performed her job duties while exercising time off pursuant to her doctor's recommendation.

49. In support of her request for a reasonable accommodation, Plaintiff offered to make up any hours that she missed due to her disability.

50. Defendants initially allowed Plaintiff to exercise her sick leave on condition that she make up more hours than she missed while tending to her disability.

51. Plaintiff reluctantly agreed to these unjust terms in fear of further retaliation.

52. Defendants later began cutting Plaintiff's hours without notice in retaliation for Plaintiff's use of sick leave to tend to her disability.

53. On or about July 26, 2023, Ms. Burleson completely removed Plaintiff from Defendants' schedule in retaliation for using sick time.

54. Plaintiff attempted to have a conversation with Ms. Burleson whereby Plaintiff inquired as to why she was removed from Defendants' schedule.

55. Plaintiff had a conversation with Ms. Burleson whereby Plaintiff educated Ms. Burleson on the severity of her disability.

56. Plaintiff provided Ms. Burleson with a comprehensive account of the severe effects endured during her episodes of uncontrollable tics, which can last for multiple hours.

57. Ms. Burleson then engaged Plaintiff in an aggressive, argumentative, and demeaning manner with the deliberate misuse of her tone and language. This behavior not only undermined the professional and respectful environment that Plaintiff was entitled to, but also significantly impacted Plaintiff's emotional well-being. Ms. Burleson's confrontational and disparaging conduct directly caused the Plaintiff to experience distress and cry.

58. Furthermore, Ms. Burleson consistently chastised the Plaintiff for showing emotional distress, thereby exacerbating the hostile nature of her conduct. She also continuously misrepresented the Plaintiff's conversations and requests, further isolating and undermining the Plaintiff. By using her position of power to intimidate, deter, and reprimand the Plaintiff, Ms. Burleson abused her authority and breached the standard of conduct expected in a professional setting. This behavior not only violated the Plaintiff's rights but also created an oppressive and harmful work environment.

59. Plaintiff informed Ms. Burleson that working with specific clients helped reduce her flare up of tics, however, Ms. Burleson refused to allow Plaintiff to work with said clients.

60. However, Ms. Burleson permitted the Plaintiff's colleague to handle specific clients following a request.

61. On June 23, 2023, Plaintiff complained to Ms. Shamblin about a hostile work environment stemming from her encounters with Ms. Burleson.

62. On June 26, 2023, Plaintiff re-iterated her request to have conversations with Ms. Burleson over email to avoid misrepresentations and harassment.

63. Despite Plaintiff's request, Ms. Burleson often refused and continuously expressed her desire to have face to face conversations with Plaintiff.

64. Ms. Burleson informed Plaintiff that she was not allowed to report a client-safety issue, because it appeared consistent with physical abuse. Ms. Burleson reasoned that Plaintiff's report could ruin someone's life if documented.

65. Plaintiff sought to use FMLA leave through Ms. Starnes, however, was denied.

66. Plaintiff's employment was terminated on or about July 28, 2023, under the incorrect claim that her physician had imposed a total restriction on her activities.

67. Ms. Mcwhorter informed her that she suffered from stress and trauma-induced anxiety stemming from her workplace in or around August 2023.

68. Defendants did not offer Plaintiff any accommodation to address her disability.

69. Ms. Burleson allowed Plaintiff's co-worker to work with specific clients after a request was made.

70. Upon information and belief, Plaintiff received different treatment from her co-worker because of Plaintiff's complaints about Ms. Burleson and her disability.

71. Plaintiff has endured significant emotional distress due to the Defendants' failure to provide accommodations and her wrongful termination.

**FIRST CLAIM FOR RELIEF**
**Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.***
*(Retaliation)*

72. Plaintiff incorporates the foregoing paragraphs by reference herein.

73. To state a prima facie claim of retaliation under Title VII, a plaintiff must establish (1) engagement in a protected activity; (2) a materially adverse action; and (3) a causal connection between the protected activity and the asserted materially adverse action. *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018).

74. In the context of a retaliation claim, a "protected activity" is an employee's participation in an ongoing investigation or proceeding under Title VII, or an employee's opposition to discriminatory practices in the workplace. *Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253, 259 (4th Cir. 1998); 42 U.S.C.A. § 2000e-3(a).

75. For the second element, the "materially adverse action' standard is explicitly less restrictive than the 'adverse employment action' standard for discrimination claims" because while "adverse employment actions' in the discrimination context must 'affect employment or alter the conditions of the workplace,' a 'materially adverse action' in the retaliation context need not impact conditions in the workplace to be actionable. Rather, a materially adverse action is one that "well might . . . dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *New v. Thermo Fisher Sci., Inc.,* 2022 U.S. Dist. LEXIS 45910.

76. Plaintiff engaged in protected activity by making multiple good faith complaints of disability discrimination and a hostile work environment.

77. Plaintiff was treated less favorably than her counterparts who did not engage in protected activity.

78. The adverse action taken against Plaintiff was motivated by her complaints about a hostile work environment based on her disability.

79. Defendants took adverse action against Plaintiff by terminating her.

80. Defendants' actions as described herein were willful and wanton and done with reckless disregard for Plaintiff's protected rights.

81. Upon information and belief, as set forth above, Defendants targeted Plaintiff for retaliatory discipline, in the form of a termination, because she complained about disparate treatment stemming from her disability and she suggested she would file a safety related report regarding one of the children she treated.

82. As a result of this disability-selective and targeted retaliation, Plaintiff was ultimately terminated because of her disability.

83. As a result of this disability-selective and targeted retaliation, Plaintiff was ultimately subjected to a hostile work environment because of her disability.

84. These materially adverse actions are sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination.

85. Upon information and belief, no other employees have been terminated and denied a reasonable accommodation for complaining about a hostile work environment or questioning Defendants' decision to improperly cut hours.

86. Defendants' conduct, as described above, was without justification or excuse; is reprehensible; and occurred despite Plaintiff's complaints to prevent, halt, and reverse the discrimination and retaliation.

87. There is a causal connection between the protected activity and the asserted materially adverse action because Plaintiff experienced a hostile work environment and termination within weeks of complaining about a hostile work environment based on disability.

88. The conduct alleged herein violates Section 704 of Title VII of the Civil Rights Act of 1964, amended, 42 U.S.C §§ 2000e *et seq.*

89. Defendants' unlawful employment practices complained of above were intentional.

90. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

91. Defendants' actions were materially adverse and would dissuade a reasonable employee from making a charge of discrimination.

92. As a proximate result of the above-described discrimination, Plaintiff sustained damages including back pay, compensatory damages including emotional distress, and has incurred attorney's fees and costs.

## SECOND CLAIM FOR RELIEF
## Discrimination in Violation of American with Disabilities Act

93. Plaintiff hereby incorporates all foregoing paragraphs as though fully alleged herein.

94. A plaintiff bringing a claim for failure to accommodate under the ADA must also allege that: (1) [she] had a disability within the meaning of the ADA; (2) the employer had notice of the disability; (3) she could perform the essential functions of her job with reasonable accommodation; and (4) the employer refused to make such [reasonable] accommodations. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).

95. At all relevant times, Plaintiff was diagnosed with and suffered from Tourette's Syndrome.

96. Plaintiff's diagnosed conditions constitute physical and mental conditions that substantially limit her major life activities, including concentrating, thinking, communicating, and working, among other things, and therefore constitute a disability under the ADA, 42 U.S.C. 12101, *et seq.*

13

97. Defendants knew of Plaintiff's diagnoses, as Plaintiff informed Defendants and requested a reasonable accommodation.

98. Plaintiff was qualified for and capable of performing all the essential functions of her position as a Registered Behavioral Therapist working for Defendants with the reasonable accommodation.

99. Plaintiff requested two sick days per month to address her episodes of uncontrollable tics.

100. Plaintiff's request would assist / allow her to successfully perform her essential job functions.

101. Defendants refused to make reasonable accommodations for Plaintiff's disability.

102. Defendants discriminated against Plaintiff based on her disability by subjecting her to a hostile work environment and failing to provide her with a reasonable accommodation.

103. As a proximate result of the above-described discrimination, Plaintiff sustained damages including back pay, compensatory damages including emotional distress, and has incurred attorney's fees and costs.

## THIRD CLAIM FOR RELIEF
### Failure To Accommodate

104. Plaintiff hereby incorporates all foregoing paragraphs as though fully alleged herein.

105. Establishing a prima facie case for failure to accommodate under the ADA requires a plaintiff to show "(1) that she was an individual who had a disability within the meaning of the statute; (2) the employer had notice of her disability; (3) she could perform the essential functions of her position with reasonable accommodations; and (4) the employer refused to make such accommodations." *Wilson v. Dollar Gen. Corp.,* 717 F.3d 337, 345 (4th Cir. 2013).

106. "[A]n employer who fails to engage in the interactive process will not be held liable if the employee cannot identify a reasonable accommodation that would have been possible." *Shoptaw v. Walmart, Inc., 2023 U.S. Dist. LEXIS 145195, *15-16*. "'[L]iability for failure to engage in an interactive process depends on a finding that, had a good faith interactive process occurred, the parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions." *Id.*

107. Determining whether a given offer of accommodation by an employer constitutes a reasonable accommodation under the ADA is a question of fact. *Kerno v. Sandoz Pharmaceuticals Corp.,* 1994 U.S. Dist. LEXIS 13265. Where the nature of the accommodation offered by an employer is undisputed and no reasonable jury could find the offered accommodation to be unreasonable, however, summary judgment is appropriate.

108. In some circumstances, an unreasonable delay may constitute a denial of an accommodation." *Murphy v. Cty. of New Hanover*, 2021 U.S. App. LEXIS 30275. However, "a relatively short delay of a few weeks (or even a few months) in approving a request typically does not support such a claim." *Id.*

109. Plaintiff is a person with a disability protected by the ADA, 42 U.S.C §12102.

110. Plaintiff has established that she is an individual with a disability, as she suffers from Tourette's Syndrome that substantially limits one or more major life activities.

111. Plaintiff provided Defendants with doctor's notes, medical records and detailed explanations outlining her medical diagnosis.

112. Plaintiff has successfully completed all her essential job functions with a reasonable accommodation – using sick time to tend to her disability.

113. Defendants did not offer Plaintiff any accommodation to address her disability.

114. Defendants could have easily accommodated Plaintiff's request to use sick time and work with specific clients.

115. Exercising sick time and working with specific clients would have enabled Plaintiff to successfully perform her essential job duties.

116. Defendants improperly denied Plaintiff's request to exercise sick leave on the blatantly false basis that Plaintiff was unable to continue performing an essential job duty or function.

117. Defendants failed to engage in a good faith interactive process.

118. But for Defendants' blatant and willful disregard for Plaintiff's reasonable accommodation, the parties would have found a reasonable accommodation that would enable Plaintiff to perform the job's essential functions.

**FOURTH CAUSE OF ACTION**
**Violation of 42 U.S.C. § 1981**
*(Hostile Work Environment)*

119. Plaintiff hereby incorporates all foregoing paragraphs as though fully alleged herein.

120. A hostile work environment claim may be brought under 42 U.S.C. 1981, which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts [. . .] as is enjoyed by white citizens." *See Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).

121. The elements for a claim of hostile work environment are the same under § 1981 as they are under Title VII. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179 (4th Cir. 2001).

122. Further, disparate treatment claims may be brought under § 1981, and the elements of a prima facie case of disparate treatment under § 1981 are the same as those for a Title VII claim. *See Gairola v. Virginia Dep't of General Services*, 753 F.2d 1281 (4th Cir. 1985).

123. Plaintiff is an American with a disability and is therefore a protected individual.

124. Plaintiff was qualified for her job, as evidenced by her years of service and extensive work experience with Defendants. Additionally, Plaintiff, in all respects, was performing her job in a manner that was consistent with Defendants' legitimate business expectations.

125. Defendants discriminated against Plaintiff as previously described herein including but not limited to a hostile work environment, being unjustly terminated for a disability, being improperly denied a reasonable accommodation, and denied a good faith interactive process.

126. Ms. Burleson has discriminated against and subjected Plaintiff to a hostile work environment when Ms. Burleson continuously used extremely argumentative, intimidating, and demeaning tones when communicating with Plaintiff.

127. Ms. Burleson did not communicate with Plaintiff's co-workers, who were not disabled, in an intimidating or argumentative tone.

128. Ms. Burleson's extremely argumentative and intimidating tone coupled with her position of power with Defendants created a hostile work environment whereby Plaintiff continued employment under continuous fear of termination and fear of tics due to the denial of her reasonable accommodation.

129. Ms. Burleson used her position of power to coerce Plaintiff not to file a report concerning a client's safety.

130. Plaintiff was harassed and discriminated against due to her disability.

17

131. But for Plaintiff's status as an American woman with a disability, she would not have suffered a legally protected right.

132. This harassment ultimately altered the conditions of Plaintiff's employment, as Plaintiff was terminated from her employment.

133. These actions were taken with willful and wanton disregard of Plaintiff's rights under § 1981.

134. The stress endured by Plaintiff was so severe that a reasonable man could not be expected to endure it.

135. As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered humiliation, degradation, emotional distress, lost wages, compensatory damages, and other damages to be determined at a trial of this matter.

## DAMAGES

136. As a result of the aforementioned conduct, Plaintiff has sustained permanent injury to her reputation; economic injuries; emotional and mental injuries; violation of her integrity; loss of valuable time; embarrassment, humiliation, compensatory damages; punitive damages; and all other injuries set forth above.

WHEREFORE, Plaintiff, Kristin Fleming, respectfully requests prays:

137. That the Court empanel a jury to hear her cause;

138. A judgment declaring that the practices complained of herein are unlawful and in violation of the Americans with Disabilities Act;

139. Actual compensatory damages pursuant to 42 U.S.C. § 12117, including but not limited to, lost wages, lost job benefits, physical and mental suffering, in an amount undetermined, but believed to be in excess of $75,000.00;

140. Costs, disbursements, and attorneys' fees pursuant to 42 U.S.C. § 12117;

141. All damages which Plaintiff has sustained because of Defendants' conduct, including back pay, benefits, general and specific damages for lost compensation, and job benefits she would have received but for Defendants' retaliatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

142. Exemplary and punitive damages in an amount commensurate with Defendants' ability and to deter future malicious, reckless, and / or intentional conduct;

143. Awarding Plaintiff the costs and disbursements incurred in connection with this action, including reasonable attorney's fees, expert witness fees and other costs;

144. Pre-judgment and post-judgment interest, as provided by law;

145. That the Court retain jurisdiction over Defendants until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

146. Granting Plaintiff other and further relief as this Court finds necessary and proper.

147. Plaintiff also seeks injunctive relief, including, but not limited to:

   a) Training regarding the prohibition against retaliation for engaging in protected activity for all of Defendants' supervisors;

   b) Training regarding the prohibition against discrimination for engaging in protected activity for all of Defendants' supervisors;

   c) Training of all employees regarding retaliation, including the reporting procedures for reporting such retaliation, conducted by reputable outside vendors;

    d) Supervisory discipline up to and including termination for any employee who engages in discrimination based upon disability, including any employee who engages in retaliatory practices; and

    e) Monitoring by the Court or a federal agency to ensure that Defendants comply with all injunctive relief.

148. Plaintiff further demands that she be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

This the 25th day of May, 2024.

*/s/M. Anthony Burts II*
M. Anthony Burts II
Attorney for Plaintiffs
N.C. State Bar No.: 49878
PO Box 102
Newton, NC 28658
Telephone: (704) 751-0455
Facsimile: (704) 413-3882